JENNIE MINTER *v.* CITY OF JACKSON.

[57 South. 549.]

KEEPING LIQUOR FOR SALE.   *Acts of* 1908, *chapter* 115.   *Evidence.*

> In a prosecution for keeping liquor for sale under acts of 1908, chapter 115, providing that the fact that any person shall be found in possession of appliances adapted to retailing intoxicating liquors, shall be presumptive evidence that he is keeping for sale intoxicating liquors contrary to law, where the evidence showed that defendant was found in possession of large quantities of intoxicating liquor a part of which was kept concealed, and empty beer bottles in large numbers, and empty glasses with fresh beer in them, corkscrews and beer openers were found, it was a question for the jury whether defendant was keeping intoxicating liquors for sale, although there was testimony tending to show that any liquor drunk on the premises was drunk by friends of defendant, and was not sold.

APPEAL from the circuit court of Hinds county.

HON. W. A. HENRY, Judge.

Jennie Minter was convicted of keeping liquor for sale and appeals.

This is an appeal from a conviction of keeping liquor for sale. The appellant was prosecuted in the police court of the city of Jackson under an ordinance making criminal laws not amounting to a felony offenses against the city. From a conviction she appealed to the circuit court, where she was again convicted. The opinion state the facts.

On the trial of the circuit court, the following instructions were given:

FOR THE CITY.

(1) "The court instructs the jury, for the city, that it is not necessary that you should know that the defendant is guilty before you are authorized to convict,

but only that you should believe from the evidence beyond a reasonable doubt that she is guilty in which event you should say by your verdict. 'We, the jury, find the defendant guilty as charged.' ''

(2) "The court instructs the jury, for the city, that if you believe from the evidence beyond all reasonable doubt that Jennie Minter, the defendant had in her possession or under her control ten quarts of Schlitz beer in the refrigerator on ice, and twenty-six quarts of Schlitz beer concealed in the back yard in a tub, and that the same was kept by her for the purpose of selling it, then it is the sworn duty of the jury to return the following verdict in this case: 'We, the jury, find the defendant guilty as charged.' ''

(3) "The court instructs the jury, for the city, that if you believe from the evidence beyond all reasonable doubt that ten quarts of Schlitz beer were found in the refrigerator in the defendant's house, and also a beer opener, a waiter with four beer glasses, empty quart bottles which had contained Schlitz beer, and empty flasks, that all these things may be considered by you in making up your verdict; and if you further believe from the evidence beyond a reasonable doubt that all these articles were found in the possession of the defendant, and that they were appliances adapted to retaining either whisky or beer, then, under the law of the state of Mississippi, this would be presumptive evidence of the defendant's guilt."

### FOR THE DEFENDANT.

(1) "The court instructs the jury, for the defendant, that it is their solemn duty to try honestly, fairly, and conscientiously to reconcile the testimony in this case with the defendant's innocence, and to return a verdict of not guilty, unless from all the evidence in the case they believe beyond every reasonable doubt that the defendant kept the liquor with the intent and for the purpose of selling the same."

(2) "The court instructs the jury, for the defendant, that the defendant is presumed by law to be absolutely and entirely innocent of the crime charged, and of every act and intent composing the crime, and that this presumption acts as a witness for the defendant, testifying for the defendant throughout the trial, until the jury reach their verdict, that the defendant is innocent; and unless you believe from the evidence beyond every reasonable doubt that the defendant is guilty, it is your solemn duty to find the defendant not guilty."

(3) "The court instructs the jury, for the defendant, that the crime of keeping intoxicating liquors for sale is composed of two separate and distinct elements: First, the physical act of keeping the liquors; and, second, the mental intent to sell the liquor—and that, although the defendant may have had the liquor, yet unless you believe beyond every reasonable doubt that she intended to sell the liquor, and that she kept it there for the purpose of selling the same, it is your duty to find the defendant not guilty."

(4) "It is the right of all persons to keep as much intoxicating liquor in their possession as they may wish, whether it be kept concealed or unconcealed, and to order just as much and just as often as they may wish, provided they do not keep the same for the purpose of selling it; and in this case, if you believe that the defendant ordered the liquor or kept the liquor for her own use, or if you have a reasonable doubt as to whether she did or did not, it is your duty to find the defendant 'not guilty.'"

(5) "The court instructs the jury, for the defendant, that you may believe from the evidence beyond every reasonable doubt that the defendant in this case had in her possession various quantities of intoxicating liquors, and had received numerous shipments of such liquors at numerous times through the express company, yet the receipt and possession of such liquors is not to be re-

ceived by you as sufficient evidence of the defendant's guilt, and raises no legal presumption of the defendant's guilt, but is on the contrary wholly consistent with the defendant's innocence, for the simple reason that she might have received and had such liquors for any one of a numper of purposes, and that before you can convict the defendant you must believe beyond every reasonable doubt that the defendant had the liquors for the purposes charged in the affidavit, and for no other.''

*W. J. Croom,* for appellant.

Now I am aware, that the court said, in the Willie Gillespie case reported, in the 51 So. 811, 96 Miss. 856, that where proof of the appliances was made, and the defendant offered no proof, to rebut the presumption, then the jury was warranted in convicting, but the court further says, in the same case that a mere denial, by the defendant, that she had unlawfully sold intoxicating liquors, would have been sufficient, to overcome the presumption, and the court in the same case quoting Mr. Wigmore, on evidence, says: ''If the opponent does offer evidence to the contrary, the presumption disappears, as a rule of law.'' Yet in this case the appellant not only denies that she sold intoxicating liquors, but it is shown, from the record, that a part of the liquor, and beer belonged to another party, and yet the court refused the fourth instruction asked by the appellant, which instruction, simply stated the law, as this court stated it in the Gillespie case, with its quotations from Mr. Wigmore, which, I say was fatal error on the part of the trial court.

See the case of *Gillespie* v. *The State,* 96 Miss. 856, 51 So. 811. And I say that every instruction given by the court, for the city was erroneous because of the fact, that there was no evidence to support them, unless the simple fact, of a person, having intoxicating liquors, in his possession, with an instrument to open the vessel

containing the liquor, and a glass to drink it out of, would warrant a conviction of the person of keeping the stuff for sale, and this I maintain, has never been the law, is not the law, and in my humble judgment never will be the law. Therefore I say that this woman has been wrongfully convicted, without authority of law, and the case should be reversed.

*Jas. R. McDowell,* assistant attorney-general, for appellee.

The appellant was convicted of keeping liquor for sale under section 1747 of the Code as amended by chapter 115, of the acts of 1908. The proof shows that on Saturday evening, she received a cask containing seventy-two quarts of beer. On Sunday morning the police raided her establishment, and found seventy-two quart bottles, thirty-six were full of beer, and the other thirty-six were empty scattered around the room, where there were also whisky bottles, a corkscrew, and waiter with tumblers containing the leavings of fresh beer. The appellant did not take the stand but one of her companions testified that four of the girls drank the thirty-six bottles the night before. This would be an average of about a water-bucket full apiece. At any rate, the jury had the benefit of all the testimony and convicted the defendant.

Our court has recently sustained convictions in two cases, under practically the same facts. See *Gillespie* v. *State,* 96 Miss. 856, and *Price* v. *Gulfport,* 52 So. 486. I feel no hesitancy in stating that the court will not reverse this case on the facts.

Counsel complains because the court refused three instructions found on pages 9, 10, and 11, of the record.

Instruction No. 2, page 9, is clearly erroneous, because on the weight of evidence, and again it is in the face of the statute which makes possession of these appliances presumptive evidence that the defendant is en-

gaged in the unlawful sale of liquor, or keeping same for sale.

The third instruction, and the fourth, were clearly in the face of the statute.

*Louis C. Hallam,* city prosecuting attorney, for appellee.

I maintain that the holding of the majority of the court in this case is in direct and irreconcilable conflict with the decision of the court in the case of *Gillespie* v. *State,* 96 Miss. 856, 51 So. 811, and that either that case ought to be expressly, unequivocally and squarely overruled, or that the judgment of the court in the present case ought to be set aside and the judgment of the lower court affirmed.

In the Gillespie case, Gillespie, a negro woman, was indicted for selling liquors unlawfully. The state proved that at her home she was found in possession of several glasses recently used for holding beer, possibly a corkscrew and beer-opener, and, hidden underneath the bottom plank of the back steps to her house, a quantity of bottled beer in a box. This was practically all of the evidence for the state. The defendant offered none. The state invokes the aid of section 1747, Code of 1906, as amended by chapter 115, Laws of 1908. A conviction was had and this court promptly affirmed the case.

In that case it was urged by Mr. R. P. Thompson, counsel for Gillespie, that the appliances were not such appliances as were contemplated by the statute, according to my recollection, and the court ignored the contention. That Gillespie did not deny that she was keeping liquor for sale, and that the appliances were used for that purpose, does not affect the case. The fact remains that the court held that these were appliances adapted to retailing within the meaning of the statute, and allowed the conviction to stand, and compelled Gillespie to suffer the law's judgment. In effect that case and the case at bar stand on exactly the same footing

before this court, for in the case at bar the jury has said that they did not believe the testimony offered by appellant, not personally, but through others, tending to rebut the presumption of law.    So the presumption stands unrebutted, as in the Gillespie case.

These are the facts as they appear in the record in this case, and as stated in the unanswerable dissenting opinion of Mr. Justice McLEAN; after the officer had found ten quarts of beer in the icebox, defendant denied that she had any other intoxicating liquors on the premises; but the officer of the law found an additional quantity in a tub in the yard covered up with old clothes and weighted down with coal. The proof shows that seventy-two quarts of beer reached this house on Saturday night about ten or eleven o'clock, and that on the following morning thirty-six quarts had been consumed; empty beer and whisky bottles were found; empty glasses with fresh beer in them were found on a silver waiter; and corkscrews and beer-openers were at hand. If anything, the facts in this case are stronger than those in the Gillespie case. If this be true, and the judgment already entered is upheld, should not the Gillespie case be expressly overruled?

But I say that the Gillespie case should not be overruled either expressly or by implication. It is right, and any other holding on the appliance feature means a total annihilation of the statute, section 1747 by judicial legislation.

If the legislature had intended that the question: What are appliances? should be a question of law, it would either have enumerated the appliances, or would have expressly stipulated that this question should be a matter for the court to determine. It did not do either. It is therefore unmistakably and uncontrovertibly, as stated in the dissenting opinion, a question of fact pure and simple. This is what the court held in *State* v. *Cunningham*, 25 Mass. 202, where it is said:

101 Miss.—10

"With what intent a person keeps intoxicating liquors is always a question of fact for the jury, to be determined upon a view of all the evidence. And in disposing of that question they are required by the statute to consider the keeping of the articles in the manner specified in the statute as presumptive evidence of an unlawful intent. But that evidence may be rebutted and controlled by the circumstances, as would be the case in the instances of the sexton and carman alluded to, as well as by any other evidence in the case, whether shown by the accused in his defense, or by the state in connection with the evidence proving the possession. With such evidence the jury may also take into consideration the presumption of the innocence of the accused." *State v. Cunningham, supra.*

In other words, not only is the question, What are appliances? a question of fact for the jury, but whether the legal presumption created by proof of the possession of such appliances has been overcome by the evidence is also a question of fact for the jury. That is, the presumption on the one hand, and the evidence tending to overcome the presumption on the other, go to the jury, and their determination that the presumption has or has not been successfully rebutted is final.

Mayes, C. J., delivered the opinion of the court.

Appellant was prosecuted by the city of Jackson for keeping vinous, spirituous, malt, and intoxicating liquors for sale, in violation of an ordinance framed under chapter 115 of the acts of 1908 amending section 1749 of the Code of 1906. The proof consists in the fact that appellant is shown to have received a cask containing seventy-two quarts of beer a day or two prior to the time a "raid" was made on her house by the police authorities of the city of Jackson. When the police authorities raided appellant's house, they found about thirty-six quarts of beer, and the other thirty-six empty

quart bottles. It seems that the police also found a few whisky bottles, a corkscrew, a waiter, and some tumblers containing the leavings of fresh beer. Appellant did not take the stand, but a witness testified that four girls, friends of appellant, drank the thirty-six bottles the night before. It appears from the testimony that only a part of the beer belonged to Jennie Minter; the other belonging to another woman who lived in the house with her. A bottle with a little whisky in it was found. This is all the evidence in reference to Jennie Minter keeping this whisky in violation of the law.

As this court has repeatedly said, there is no law which prohibits a person from keeping whisky, no matter what the quantity, unless it is kept for some unlawful purpose, and when the above charge is made the proof must not only show that the person charged had intoxicating liquors, but that the liquor was kept for an unlawful purpose. The testimony in this case does no more than create a suspicion that the beer found was kept for an unlawful purpose, if it can be said to do that. That a person ordered a cask of beer raises no presumption that he ordered it for an unlawful purpose. When a house is searched, and it is discovered that the beer has been put to the use which it might be supposed the party ordering it intended it should be, and for which it is made, and when it additionally appears that the beer had been opened with a corkscrew and drunk from a glass, this is not sufficient to warrant the presumption that it was kept for an unlawful purpose. When section 1747 of the Code of 1906, as amended by acts of 1908, p. 117, provides that the fact that any person has in possession appliances adapted to the retailing of liquor shall be presumptive evidence that the person having the appliances is engaged in keeping intoxicating liquors for sale, or for the purpose of giving same away in violation of law, it does not and cannot mean that when a home is invaded and searched, and glasses,

and a waiter, and a corkscrew, and intoxicating liquors are found, that these things alone shall warrant the conviction of any person under this statute. The glasses, waiter, corkscrew, and sometimes intoxicating liquors, are found in many innocent homes. In fact, a home cannot be properly furnished without glasses and waiters. If these things be found in a storehouse, or in and about a person's place of business, this fact may be a stronger circumstance of guilt than when found in a home; but in all cases these things alone cannot be said to be such appliances, within the meaning of the statute, as to warrant a conviction in themselves. It may be difficult to prove the crime charged in this affidavit, and it should be. The legislature has not said that it shall be unlawful to keep whisky for any purpose, and, when a person is found with intoxicating liquors at his home, this fact should not, in itself, warrant the presumption that such person has liquors for an unlawful purpose, unless other facts are sufficient to justify a conclusion that the having of the liquors is for some unlawful purpose. This case falls within the principles declared by the case of *McComb City* v. *Hill*, 56 So. 346, and *Stansberry* v. *State*, 53 So. 783.

The case is reversed and remanded.

McLEAN, J. (dissenting).

I regret exceedingly that I cannot see my way clear to agree with my Brethren in this cause. The majority of the court concede that there were no errors of law committed in the court below. They must concede that the only question which the record presents is a question of fact, and this question of fact, having been properly submitted to and passed upon by the jury, should not be disturbed, except in extreme cases—in other words, the record should overwhelmingly convince this court that the verdict of the jury was wrong upon the facts. In my humble judgment this is not done; but, upon the

other hand, there is ample testimony to sustain this verdict. The reporter will set out in full the instructions given for both the state and the defense, in order that it may be seen that the jury were not only properly charged, but that they were instructed on behalf of the defendant from every conceivable viewpoint that the evidence would permit.

Section 1747 of the Code, as amended by chapter 115 of the acts of 1908, provides, among other things, as follows: ''The fact that any person shall be found in possession of appliances adapted to retailing such liquors shall be presumptive evidence that the person is engaged in keeping for sale . . . intoxicating liquors contrary to law.'' I am unable to draw any distinction between the instant case and *Gillespie* v. *State,* 96 Miss. 856, 51 So. 811, 926. I have carefully read the record in the Gillespie case, and the facts in that case are strikingly identical with the facts in the instant case. In both cases a portion of the intoxicating liquors were kept concealed; empty beer bottles were found in large numbers; empty glasses with fresh beer in them were found; corkscrews and beer openers were at hand, and the places where they were—in fact, everything well calculated to convince a jury, composed of reasonable men, that the defendant did not have this large quantity of intoxicating liquors on hand for her sole use and benefit, but upon the other hand, is presumptive evidence of guilt under that portion of the statute hereinbefore quoted, and placed upon the defendant the burden, at least, of making some explanation.

In the first place, the defendant in the instant case, when the officer first appeared with his search warrant, and after he had found ten quarts of beer in the ice box, denied that she had any other intoxicating liquors on the premises; but the officer of the law found an additional quantity in a tub in the yard, covered up with old clothes and weighted down with coal. The proof shows

that seventy-two quarts of beer reached this house on Saturday night, about ten or eleven o'clock, and that on the following morning thirty-six quarts had been consumed by the inmates of that establishment, consisting of four girls. In other words, each girl had consumed nine quarts of beer and was sober—not intoxicated; and everything about this establishment indicated that this large quantity of intoxicating liquors was not kept for private use. It does not require a very great stretch of the imagination to conclude that this house was a bawdyhouse. However all this may be, this court is encroaching upon the province of the jury when it undertakes to reverse this case upon the facts shown in the record. It is respectfully insisted that the majority opinion of this court (and it must be borne in mind that this is simply a court of review) is not at all consistent with the course of a court of review. The rule in such cases is that if there is any evidence at all to support the findings of the jury, there being no error in the record, the verdict should not be disturbed.

No one questions the right of an individual to purchase, for his own use, as many quarts of beer or as many gallons of whisky as his thirst demands. There is very little danger that any "gentleman of standing," in whose possession may be found quantities of beer and whisky, is apt to be convicted of violating the liquor laws by a jury. A person's standing in the community has a great deal to do in forming, and in shaping, and leading to a conclusion, the judgment of a jury. It is not usual for the innocent to keep hid out in the back yard intoxicating liquors, in a tub covered with old clothes, and weighted down so as to conceal the same from the passer-by; nor is it usual and customary to find empty beer glasses, with fresh beer in them, in every room in the house. While "wine, women, and song" are frequently found together, yet, at the same time, we are not authorized, innocent though we may

be, to shut our eyes to a matter of common knowledge, and that is that bawdyhouse keepers are not in the habit of furnishing beer and other intoxicating liquors free of charge to their inmates, but, upon the other hand, such things are kept as additional revenues to these dens of infamy; and those who go there are expected, "while they enjoy the songs of the sirens," to pay the fiddler by purchasing beer and paying exorbitant prices for these *"incidental"* amusements. These "incidentals" are a part of the traffic. They assist largely in maintaining the "dignity" of the establishment. It is true there is no direct evidence in this record that the appellant kept a bawdyhouse, yet here and there through the record, are seen glimpses of those things which indicate that such is the case. At all events, the jury in this case, so far as the record shows, fairly and impartially considered the facts; and it should be a very extreme case in order to justify this court in setting aside the verdict of a jury.

This court need not be at all sensitive about a violator of the liquor laws being unjustly punished. Long experience and observation of the writer of this opinion, in the *nisi prius* courts, convinces him that a large percentage of those who violate the prohibition laws escape punishment. The courts cannot be too rigid in the enforcement of a law, the violation of which is the mother of so much evil and crime—the ruin and degradation of so many of our people.

### ON SUGGESTION OF ERROR.

SMITH, J., delivered the opinion of the court.

An examination of the original record in the case of *Gillespie* v. *State,* discloses that it is, if anything, a weaker case for the state than the one at bar, and, consequently, I am of the opinion that we erred in reversing the judgment of the court below. That case, which will be found reported in 96 Miss. 856, 51 So. 811, de-

cided three propositions:  First, that the statute, in
question was constitutional; second, that the evidence
of the appliances found in appellant's possession was
sufficient to raise the presumption of guilt created by the
statute; and, third, that the court below complied with
the statute in granting the instrucitons to the jury. As
reported in each of these reports, the case is of no value
on the second proposition, for the reason that neither
of them contain a statement of the facts. In that case
appellant was found in possession of intoxicating liquor
in bottles of convenient size, and, in the language of the
witness, "there were whisky glasses and common tum-
blers setting around." In one room of the house empty
beer bottles, with a little beer and foam remaining in
them, were found on the table. In the case at bar ap-
pellant was found in possession of intoxicating liquor
in bottles of convenient size, glasses, waiters, a beer
opener, and an ice box containing beer on ice. Empty
beer glasses, with fresh beer in them, were found in
every room in the house. There was also some other
evidence in each of these cases indicating that beer had
been recently drunk on the premises, and in each case,
after appellant had denied having intoxicating liquor in
possession, such liquor was found on the premises, ap-
pellant's residence, some of it concealed in the yard.

It is true that the possession of the appliances found
on appellant's premises is consistent with her innocence,
and, were it not for the statute in question, no infer-
ence of guilt could be drawn therefrom alone; but since
the legislature has made such possession evidence of
guilt, it is ordinarily for the jury, and not the court,
to say whether it is sufficient to constitute proof there-
of. Of course, the presumption of guilt raised by the
statute will be stronger or weaker, according to the
character of appliances found and the circumstances
surrounding their possession. The evidence introduced
by appellant, if true, was sufficient to overthrow the

*prima facie* case she was called upon to meet; but the credibility of the witness delivering it was for the determination of the jury, and an examination of this testimony will disclose that they were well warranted in rejecting it.

As I am in accord with the views heretofore expressed by my Brother McLEAN, it follows that the former judgment herein must be set aside, and the judgment of the court below affirmed.                           *Affirmed.*

MAYES, C. J. (dissenting on the sustaining of the suggestion of error).

In the original opinion filed in this case I have substantially stated the facts. There is no hint in this record, falling from the lips of any witness, that Jennie Minter was keeping a house of bad character. As was stated in the opinion, the proof in the case only shows that thirty-six bottles of beer belonged and were found in the room of appellant. She is charged with keeping intoxicating liquors for sale. Ten bottles were found in an ice cooler in her house and twenty-six bottles were found in the yard in a tub. Where the liquors were found seems to me to be immaterial, since mere possession did not constitute guilt. We must interpret human nature as we find it, and not as we would have it. When homes are to be raided in the search for intoxicating liquors, we may expect the timid and the fearful to hide it from the officers of the law. Since the statute does not condemn the mere having of the intoxicating liquor in possession, it cannot matter where it is kept. In the *Stansberry case,* 53 So. 783, and the *Hill case,* 56 So. 346, this court has held that mere quantity, in the absence of proof of other unlawful purposes, even under the statute, cannot justify a conviction of having intoxicating liquors for purpose of sale or giving away in violation of law. In the Stansberry case, Stansberry had a gallon of gin and four quarts, or a gallon,

of whisky. This court said a conviction could not stand, even under the statute in the case. In the Hill case, the court said the same on facts which showed about the same quantity of whisky.

What is this statute, to which such strong appeal is made? When the statute is examined and analyzed, it is narrower than the scope given it by this opinion of the court in this case. The legislature designed to keep it within constitutional limits, but the court is about to press it beyond those limits. The statute does not say what the court has construed it to mean, in my judgment. The statute in question is section 1747 of the Code of 1906, as amended by acts 1908, p. 117, sec. 1, and it provides, in substance, that the having of a revenue license from the United States government, authorizing the selling of intoxicating liquors, shall be *prima facie* evidence that any person having such license is engaged in keeping for sale, or to be given away to induce trade, or in selling liquors, in violation of law. No proof warranting a conviction under this clause of the statute is found in the record. Again, the statute provides that any person "who shall be found in possession of appliances adapted to retailing" shall be presumed to be engaged in violating the liquor laws, as above stated. If this conviction is to stand, it must rest alone on the fact that when this home was raided the policemen found a waiter, a corkscrew, and some tumblers. These were the only "appliances" that any witness says were found in this house. These cannot be said to be "appliances adapted to retailing liquors" in any sense of the statute, because they are articles of necessary household utility, and not a single householder but that could be prosecuted and convicted under the statute. The finding of thirty-six bottles of beer at this house is not proof of anything, because this court has so held in two cases.

My own view is that the statute making the having of appliances adapted to retailing *prima facie* evidence of

guilt strains the constitutional power of the legislature to its utmost limit.  It is possibly within the constitutional power of the legislature to prohibit whisky from being imported into this state or kept in any home; but, if it be conceded that the legislature have this power, they have not done it, and until they have exerted the power intoxicating liquors may be kept in a home in moderate quantities, without being any kind of proof of a violation of the liquor laws of the state.  However much it may be desirable to enforce the prohibitory laws of the state, this court cannot allow itself to be swept from its judicial poise, and affirm convictions on facts which neither prove nor tend to prove any violation of the law.

It is my judgment that in this case there was no proof to go to the jury.